H. Craig Hall (#1307)
James K. Tracy (#6668)
Jennifer A. Brown (#9514)
CHAPMAN AND CUTLER LLP
201 South Main Street, Suite 2000
Salt Lake City, Utah 84111
Telephone:   801-320-6700
Facsimile:   801-533-9595
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| LINDA MITCHELL, <br><br> Plaintiff <br><br> vs. <br><br> MARCELO RAPELA and GREGG OLSEN, <br><br> Defendants. | **NOTICE OF FILING EXPERT REPORT OF KENNETH R. WALLENTINE** <br><br> Civil No. 2:08-cv-00726-DB <br><br> Judge Dee Benson |

The Defendants hereby give notice of the filing of the Expert Report of Kenneth R. Wallentine, attached hereto.

DATED this 10th day of December, 2009.

CHAPMAN AND CUTLER LLP

By: _____
H. Craig Hall
James K. Tracy
Jennifer A. Brown
Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing **NOTICE OF FILING EXPERT REPORT OF KENNETH R. WALLENTINE** was served on the 10th day of December, 2009, by United States first class mail, postage prepaid, on the following:

Robert B. Sykes
Alyson E. Carter
ROBERT B. SYKES & ASSOCIATES, P.C.
311 South State Street, Suite 240
Salt Lake City, Utah 84111
(also by CM/ECF)

*/s/ Kimberly Given*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| LINDA MITCHELL,<br>    Plaintiff, | : | Civil No. 2:08-cv-00726-DB |
| vs. | : | Judge Dee Benson |
| MARCELO RAPELA, *et al.*,<br>    Defendants. | :<br>: | Report of Kenneth R. Wallentine |

The following report of Kenneth R. Wallentine is submitted after review of the following documents, pleadings, records, and reports: Amended Complaint, Midvale City Police Department reports relating to the May 23, 2007, arrest of Linda Mitchell, Depositions of Steven Morby, Barbara Davidson, Linda Mitchell, Gregg Olsen, and Marcelo Rapela and associated deposition exhibits; and Plaintiff's Initial and Supplemental Responses to Defendants' First Interrogatories.

1

Kenneth R. Wallentine states as follows:

1.  I am a law enforcement officer in the State of Utah. My primary employment is for the Utah Attorney General, where I serve as Chief of Law Enforcement. I was formerly employed as a Bureau Chief at the Utah Department of Public Safety, Peace Officer Standards and Training Division, where I supervised investigations into allegations of improper and excessive force, officer integrity, and criminal acts alleged to have been committed by law enforcement officers and supervised in-service training administration and certification for all peace officers in the State of Utah, and supervised the Police Service Dog training and certification program. I also had responsibility for policy drafting and review for the parent agency, the Utah Department of Public Safety. I was certified as a law enforcement officer in the State of Utah in 1982. My duties include direct supervision and command of three Investigation Sections, supervising approximately thirty-five law enforcement officers, forensic specialists, and technicians, as well as a number of part-time employees. I command the State of Utah Child Abduction Response Team. I command the State of Utah Officer-Involved Fatality Investigation Team.

2.  I was formerly responsible for providing delivery of the Basic Training Curriculum related to all legal subjects, as well as certain tactical subjects, at the Utah Law Enforcement Academy. I am the author of the police academy curriculum currently in use for several subjects, including, but not limited to, use of force, reasonable force, use of force and police service dog teams, search and seizure, search and seizure for police service dog teams, and use of force/firearms instructor liability. I regularly teach in the Basic Training programs of the Utah State Police Academy. I regularly teach in the following specialized courses: Advanced Officer Course, Firearms Instructor Course, Utah Drug Academy, Utah Crime Scene Investigators

2

*Mitchell v. Rapella, et al.*
*Report of Kenneth R. Wallentine*

Academy, Utah Sheriffs' Association Command College, First Line Supervisor Course, POST K9 Unit Administrator Course, POST Patrol Dog Handler Course, POST Narcotics Detector Dog Course, and others. I am a former police service dog handler and worked with the Uintah County Sheriff's K9 Unit from 1995 to 2001. I continue to provide instruction and evaluation services for the POST Police Service Dog program. I am a certified POST Firearms Instructor, often serving as the lead instructor for POST Firearms courses. I am a certified TASER® Instructor. I am a certified Excited Delirium and Sudden Death Investigation Instructor.

3. I am a licensed attorney, having practiced law since 1990. I am an adjunct Professor of Law at J. Reuben Clark Law School, Brigham Young University, where I teach Criminal Procedure. I am admitted to practice before the United States Supreme Court, the Courts of Appeals for the Fifth and Tenth Circuits, and the State and Federal courts in the State of Utah. I am a Master of the Bench of the American Inns of Court, Inn One, where I also serve as immediate past-President of the Inn of Court. I serve as an Administrative Law Judge *pro tempore* for the State of Utah, for the City of South Salt Lake, Utah, and for Emery County, Utah, providing hearing officer and appellate hearing services for hearings involving allegations of police officer misconduct and other matters.

4. In addition to my primary employment, I occasionally consult and provide expert witness opinions on police procedures, and use of force issues. I am on the adjunct faculty of Excelsior College, teaching Criminal Law, Criminal Procedure, Evidence and Management Strategies for Public Safety. I occasionally perform in-custody death investigations and officer-involved shooting death investigations for agencies which may lack the requisite expertise. I am a consultant to the Utah Risk Management Mutual Association, the state's largest insurer of public

safety agencies, on matters of officer conduct and discipline, hiring and screening practices, use of force, and police pursuit policies. I am the co-founder of, and legal advisor to, a best practices advisory group that developed comprehensive model policies and best practices under the authority of the Utah Chiefs of Police Association, the Utah Sheriffs' Association and various state law enforcement agencies. These policies serve as a model for all Utah public safety agencies. I occasionally perform in-custody death investigations and officer-involved shooting death investigations for agencies which may lack the requisite expertise. I am the author of a number of model policies for law enforcement agencies, and have provided policy drafting and policy review services for several agencies, including policy drafting responsibility for large law enforcement agencies. I am a program and grant reviewer for the Office of Justice Programs, United States Department of Justice. I have also served as a contract consultant to the United States Department of Justice, assigned to provide technical assistance and management consulting to various public safety entities in the United States.

5.     I participate and serve in a number of community and professional capacities. I am a member of the Scientific Working Group on Dog and Orthogonal Detector Guidelines (SWGDOG), a national scientific best practices organization sponsored by the Federal Bureau of Investigation, the Department of Homeland Security, and the Transportation Security Administration, with support coordinated by the International Forensic Research Institute at Florida International University. Other professional activities pertinent to law enforcement include serving as a Past-President of the Utah Peace Officers Association, former Board Member of the Utah SWAT Association, member of the International Association of Law Enforcement Educators and Trainers Association, member of the International Association of

4

Chiefs of Police and the Utah Chiefs of Police Association, member of the National Tactical Officers Association, member of the International Association of Law Enforcement Firearms Instructors, member of the K9 Section of the Utah Peace Officers Association, member of the United States Police Canine Association, and member of the Utah Law Enforcement Legislative Committee. I formerly served as a gubernatorial appointee to the Council on Peace Officer Standards and Training. I currently serve as a member *pro tempore* of the Council on Peace Officer Standards and Training.

6. Since 1994, I have been a consultant with the K9 Academy for Law Enforcement and the International Police Canine Conference. My principal responsibilities are to provide use of force training, civil liability instruction, and search and seizure instruction. In the past few years, I have restricted my travel outside the State of Utah, but have continued to provide use of force, civil rights liability, and search and seizure law enforcement training in Arizona, Iowa, and California. Over the past several years, I have lectured and trained police officers and administrators from Wyoming, Arizona, Connecticut, Florida, North Carolina, South Carolina, Texas, Utah, Colorado, Alabama, Louisiana, Nevada, New York, New Hampshire, Vermont, Rhode Island, Maine, Delaware, Wisconsin, Michigan, Indiana, Washington, Oregon, Nebraska, Georgia, California, Nevada, and Idaho. I am also a consultant on canine policies and procedures for the Western States Police Canine Association. I am a consultant and instructor for the California Narcotics Canine Association.

7. I have previously published a number of other professional articles, most of which have been subjected to professional peer review. My most recent book, *The K9 Officer's Legal Handbook*, was published by Lexis/Nexis Matthew Bender in December 2008. Another recent

book, *Street Legal: A Guide to Pre-trial Criminal Procedure for Police, Prosecutors, and Defenders* was published in 2007 by the American Bar Association Publishing Division. It is a treatise on public safety and criminal procedure, and includes chapters on use of force by police officers and police service dog use of force. My other published works, limited to the past ten years, include: *The Risky Continuum: Abandoning the Use of Force Continuum to Enhance Risk Management*, The Municipal Lawyer, July 2009; *Acknowledging Gender in Fitness Standards for Police: An Invitation to Liability?*, The Municipal Lawyer, January 2008; *K9 Court Testimony*, Police K9, December 2006; *United States Supreme Court Review for Corrections Managers*, Corrections Managers Report, October 2006; *Criminal Procedure: The Street Cop's Guide* (Aspen Press 2005); *Conduct Unbecoming an Officer*, The Municipal Lawyer, January, 2005; *Limits on Off-Duty Police Employment*, The Municipal Lawyer, Spring 2004; *Conjugal Prison Visits*, Corrections Manager, March, 2003; *Life in the Law* (BYU Press 2002), co-author; *Investigating In-Custody Death*, Corrections Manager Report, October 2002; *Police Canine Risk Management*, The Municipal Lawyer, July 2002; *The New Paradigm of Firearms Training*, IADLEST News, Spring 2001; *Use of Deadly Force Instructor Curriculum* (monograph), POST, Spring 2001; *Pepper Spray as Use of Force*, Police, October 2000; *Are Drug Courts the Wave of the Future?*, Police, April 2000; *Legal Risks of Tactical Operation*, Police, April 1999; *Dogs of War (K9 Use of Force)/FLSA & K9 Handlers*, Police, December 1998/January 1999; and a variety of columns addressing law enforcement issues and published by PoliceOne.com. I am the author of a reference book currently in use in the Utah Law Enforcement Academy, as well as other police academies throughout the United States, titled *Criminal Procedure: The Street Cop's Guide* (Aspen Press 2005). This book discusses detention and arrest of persons, use of

force, and search and seizure of persons and property, canine search principles and other subjects.

8.      I charge a fee for private consultation services and court testimony. For those matters which progress beyond an initial brief consultation, I charge $200.00 per hour for all activities outside of court testimony, a travel fee of $1,000.00 per day, plus actual expenses, for travel to western states and $1,500.00 per day for all other states, and $250.00 per hour when offering testimony. I have testified and/or provided depositions in the following cases which may be generally related to the subject of the instant litigation in the past four years: *United States v. Ludwig*, Case No. 08-CR-224-D, United States District Court of Wyoming, 2009. Court testimony given on behalf of the prosecution. Subject matter: improper training and whether a drug detector dog was reliable and whether the dog was cued. *Evans v. Taylorsville City*, Case No. 2:06-CV-00631 TS, United States District Court of Utah, Central Division, 2009. Deposition testimony given on behalf of the defendants. Subject matter: improper execution of search warrant, negligent investigation. *Swofford v. Eslinger*, Case No. 6:08-CV-00066-PCF-DAB, United States District Court of Florida, Orlando Division, 2009. Deposition testimony given on behalf of the defendants. Subject matter: excessive force. *Becker v. Bateman*, Case No. 2:07-CV-311 PGC, United States District Court of Utah, Central Division, 2008. Deposition testimony given on behalf of the defendants. Subject matter: excessive force. *Salva v. Kansas City Board of Police Commissioners*, Case No. 07-CV00194-JTM, United States District Court of Missouri, Western Division, 2008. Deposition testimony given on behalf of the defendants. Subject matter: Wrongful death. *Turnbow v. Ogden City et al.*, Case No. 1:07-CV-114, United States District Court of Utah, Central Division, 2008. Deposition testimony given on behalf of

7

*Mitchell v. Rapella, et al.*
*Report of Kenneth R. Wallentine*

the defendants. Subject matter: Wrongful death. *Nielson v. South Salt Lake City & Burnham*, Case No. 2:06-CV-335, United States District Court of Utah, Central Division, 2008. Deposition testimony given on behalf of the defendants. Subject matter: sexual misconduct. *Trammell v. Jacksonville Beach City Police Department*, Case No. 3:06-CV-984-J-16MMH, United States District Court of Florida, Jacksonville Division, 2008. Deposition testimony given on behalf of the plaintiffs. Subject matter: excessive force. *Harman & Overton v. Utah Department of Public Safety,* Case No. 2:03CV00558TC, United States District Court of Utah, Central Division, 2007. Deposition testimony given on behalf of the defendants. Subject matter: wrongful execution of a search warrant, negligent investigation. *Herring v. City of Colorado Springs*, Civil No. 04-CV-024229-PAC-BNB, United States District Court of Colorado, 2005. Deposition testimony given on behalf of the defendants. Subject matter: excessive use of force, wrongful death.

9.   In the instant matter, I have relied upon the documents, photographs, records, reports, and statements previously described. I have formed a number of opinions based upon the aforementioned, as well as my experience, education, training, and familiarity with professional publications. I have relied on a variety of professional publications, including, but not limited to, my own publications and court decisions cited therein. Those opinions, and facts known or reported to me upon which those opinions are based, are set forth herein as follows:

a.   ***The entry into the home at 179 West 8600 South, Midvale, Utah, in pursuit of Linda Mitchell was reasonable and comported with generally accepted police practices.***

   1.   A number of Midvale City Police officers went to the area of a home at 179 West 8600 South, Midvale, Utah, on the night of May 23, 2007, in response to a call

    from Officer Dow, who had observed a stolen car at the home. This home was known to the Midvale Police Department and was distinct in a number of ways. The home at 179 West 8600 South, Midvale, Utah, had been "flagged" in the computer-assisted dispatching system. This is a step taken when there is a significant history of calls for service at a particular location and/or there are particular risk factors associated with the home that warrant communication of those factors to police officers responding on any call at the particular location.

2. Even before notifying the dispatcher that he had observed a stolen car at the home, Officer Dow knew that other stolen cars had previously been found at the home and that the home was a known "drug house." These factors alone would warrant a substantial increase in the measured police response, to wit, additional officers, and a heightened caution and tactical response by police officers.

3. In addition to the known history of multiple stolen cars and illegal drug use at the home, the officers also knew that a stolen high-powered assault rifle had been recovered during the execution of a search warrant at the home sometime earlier. The aggregated factors of felonious criminal history of stolen cars, illegal drug use and possession of a stolen assault rifle created a high-risk situation for police response. As Sergeant Olsen noted in his deposition, police officers are taught to exercise great caution when dealing with persons involved in auto theft. This is considered, based on experience, a high risk situation for police. In fact, these are significant factors used in formal risk assessment tools used to determine the method of execution of a search warrant. Sergeant Olsen communicated to other

*Mitchell v. Rapella, et al.*
*Report of Kenneth R. Wallentine*

officers that there was a heightened safety concern involved in a response to this home.

4. As Officer Dow approached the home with other officers, Officer Pickle could see a person sitting inside the stolen car (later identified as Barbara Davidson) and another person standing outside of the stolen car. The officers approached the stolen car and house and gave commands to the person inside and the person near the stolen car. As officers were taking these two persons into custody, Linda Mitchell came to the door of the house and stepped outside, presumably to see what was happening in front of the house. Officer Dow ordered Mitchell to show her hands and to come toward him. Rather than comply with Officer Dow's lawful order to cooperate with his attempt to detain her, Linda Mitchell looked at Dow, turned and fled into the home. She moved toward the kitchen where several knives were readily available to her on the counter.

5. As Mitchell fled into the home, Officer Rapela followed her to detain her and keep her from reaching a weapon. He could see the knives just in front of Mitchell. Officer Rapela grabbed Mitchell. She immediately attempted to escape and he told her to stop resisting his efforts to detain her. She continued to resist.

6. A reasonable police officer would have recognized the very high danger level presented by a person who witnessed others being arrested, was commanded to submit to detention, and turned and fled into a house where there was a well-established history of possession of a very dangerous and deadly stolen assault

10

*Mitchell v. Rapella, et al.*
*Report of Kenneth R. Wallentine*

       rifle and where the officers had just been told that drug and vehicle theft crimes regularly occurred.

7. Officer Rapela's pursuit into the home to detain Linda Mitchell was reasonable and comported with generally accepted police practices and practices routinely taught in police training.

b. ***Linda Mitchell's actions necessitated the use of force to apprehend her, control her and place her into custody pursuant to a lawful arrest.***

1. Linda Mitchell chose to disregard the lawful order of an officer participating into the investigation of the vehicle that she committed and to flee. As discussed above, it was necessary for Officer Rapela to pursue her and use force to detain her and to continue to use force when she would not comply with his verbal directions to submit to his custody and cease resisting.

2. When Linda Mitchell continued to resist Officer Rapela's efforts to detain her, Officer Rapela attempted to stabilize her against a wall so that he could control her. Stabilization against a firm surface, including assisting a person to the ground for stabilization, is a common police technique. Police officers are taught that controlling and handcuffing a person can be more easily accomplished when there is a stable surface, particularly when on the ground. This is a technique that generally shortens the duration of the struggle and reduces the exposure to injury to the officer and the suspect.

3. As Officer Rapela struggled to control Mitchell, Sergeant Olsen came to assist him. Because Mitchell continued to struggle and resist efforts to control her,

11

*Mitchell v. Rapella, et al.*
*Report of Kenneth R. Wallentine*

        Sergeant Olsen applied a single exposure of a TASER® electronic control device to one of Mitchell's legs. This produced the desired effect of temporarily interrupting Mitchell's resistence so that Officer Rapela could assist Mitchell to the ground and more quickly control her. Mitchell tucked her hands underneath her. This presented a dangerous situation because the officers could not see her hands and did not know whether she had a weapon concealed on the front of her body. Officer Rapela and other officers told Mitchell to show them her hands. She did not. Sergeant Olsen applied another TASER® electronic control device deployment to Mitchell's upper left leg. This prompted Mitchell to cease resisting long enough for Officer Rapela to place handcuffs on Mitchell.

4.     Officer Rapela and Sergeant Olsen used reasonable force to respond to Mitchell and to take her into custody. Assisting Mitchell to the ground and using a TASER® electronic control device were both reasonable techniques that comported with generally accepted police practices and standard police training.

These observations and opinions are preliminary, insofar as additional information may be provided to me through the course of discovery and provision of further factual information and other incidents of the prosecution process. They are based on the best information presently known to me. I have assumed the general accuracy of the documents, statements, and reports, excepting those expressed as opinions and those conflicting one with another and/or conflicting with physical evidence, that were provided to me. The opinions herein may be supplemented and/or revised upon receipt of additional information, including, but not limited to, deposition testimony, consideration of any report submitted by plaintiff's expert, and further investigation.

Should I be called to testify in this matter, my trial testimony may be supported by exhibits that include the pleadings, documents, statements, video recording, photographs, and reports listed herein, as well as illustrative evidence such as a visual presentation of computer-generated slides and visual images projected onto a screen charts, graphs, or illustrations created to better illustrate the aforementioned exhibits.

## CONCLUSION

It was reasonable for officers to enter the home at 179 West 8600 South, Midvale, Utah, on the night of May 23, 2007, in pursuit of Linda Mitchell. Mitchell's refusal to comply with lawful orders to cooperate in her detention necessitated the use of force by the officers. The officers' use of force to detain Mitchell and take her into custody was reasonable and they used reasonable methods that comport with generally accepted police practices and police training.

*[signature]*

Kenneth R. Wallentine
December 3, 2009

Kenneth R. Wallentine
5272 South College Drive, Suite 200
Murray, Utah 84123

13

*Mitchell v. Rapella, et al.*
*Report of Kenneth R. Wallentine*